819 So.2d 72 (1999)
Ex parte State of Alabama.
(In re STATE of Alabama v. Jacqueline Rhea REYNOLDS).
CR-98-2015.
Court of Criminal Appeals of Alabama.
October 6, 1999.
Opinion on Return December 3, 1999.
*73 Bill Pryor, atty. gen., and R.L. Dill, asst. district atty., Huntsville, for petitioner.
Derek W. Simpson, Huntsville, for respondent.
LONG, Presiding Judge.
The State of Alabama filed this petition for a writ of mandamus requesting that we direct the Honorable Bruce E. Williams, circuit judge for the Twenty-third Judicial Circuit, to quash the subpoena duces tecum issued in this case to the Green Bottle Grill restaurant. In October 1998, Reynolds, a former bookkeeper for Green Bottle Grill, was indicted for theft of property *74 in the first degree for stealing $11,198.12 from Green Bottle Grill by altering point of sale reports and deposit slips. After the State furnished Reynolds with the discovery materials requested pursuant to Rule 16.1, Ala.R.Crim.P., Reynolds served a subpoena duces tecum on Green Bottle Grill, ordering the restaurant to produce numerous records and financial documents that date back to 1996, prior to Reynolds's employment with the company. The State moved to quash the subpoena. After a hearing, Judge Williams denied the motion, and this petition followed. This Court stayed the enforcement of the subpoena until this mandamus petition could be resolved.
Initially, we must determine if a petition for a writ of mandamus is the appropriate method to challenge Judge Williams's ruling. The ruling in this case will not support an appeal, because there is no final judgment. As the Alabama Supreme Court stated in Ex parte Thackston, 275 Ala. 424, 426, 155 So.2d 526 (1963), "this court has reviewed the issuance of a subpoena duces tecum, both as to parties and non-parties, or witnesses, on a petition for mandamus." See also Ex parte Fitch, 715 So.2d 873 (Ala.Cr.App. 1997).
The subpoena in this case directed the Green Bottle Grill to furnish the following documents:
"(1) all server tickets from December 1996 through February 1998; Copies of all server daily micro cash reports from December 1996 through February 1998; Copies of all deposit books or deposit slips from December 1996 through February 1998; Copies of all 15Z reports from December 1996 through February 1998; Copies of all 9Z reports from December 1996 through February 1998; copies of all employee work schedules from December 1996 through February 1998; copies of all account audit reports from December 1996 through February 1998; copies of all 16Z reports from December 1996 through February 1998; copies of all financial statements and records from December 1996 through February 1998."
Reynolds was charged with theft for conduct that occurred between October 1997 and February 1998. It is not disputed that Reynolds has already received, though discovery, all of the records from the Green Bottle Grill that the State intends to introduce at trial.
The State argues that Judge Williams abused his discretion in denying the motion to quash the subpoena because, it argues, Reynolds failed to show that the requested materials were necessary and material. It cites the case of Sale v. State, 570 So.2d 862 (Ala.Cr.App.1990), for the following proposition: "Without an affidavit of necessity and materiality, a subpoena duces tecum requested at or before trial cannot be sustained." Reynolds argues that it was within Judge Williams's discretion to grant the subpoena duces tecum and cites the Alabama Supreme Court's opinion in Ex parte Land, 775 So.2d 847 (Ala.2000).
The statement in Sale cited by the State applies to subpoenas duces tecum issued to parties; the language in that case tracks the language of § 12-21-3, Code of Alabama 1975, which states:
"The court may, upon affidavit of their necessity and materiality, upon motion, compel, by order, either party to produce, at or before the trial, any book, paper or document in his possession or power. The order may be made upon the application of either party, upon reasonable notice to the adverse party or his attorney. If not produced, parol evidence may be given of its contents."
*75 The Green Bottle Grill is not a "party" to the criminal prosecutionit is the victim. Nettles v. State, 435 So.2d 146 (Ala.Cr. App.), aff'd, 435 So.2d 151 (Ala.1983). Section 12-21-2 governs subpoenas duces tecum issued to nonparties.
Reynolds's argument ignores the fact that Land involved discovery in a postconviction proceeding. The Land court held that a postconviction petitioner requesting discovery of documents must show good cause for disclosure of the documents. That case has no application to the present case. This case involves the issuance of a subpoena duces tecum.
The use of subpoenas duces tecum in criminal cases is specifically authorized by Rule 17.3, Ala.R.Crim.P., and by § 12-21-2. Rule 17.3 states, in part:
"(a) Production of Books, Papers, etc. A subpoena may command the person to whom it is directed to produce the books, papers, documents, or other objects which may be designated therein.
"(b) Production Prior to Trial and for Inspection. The court may direct that books, papers, documents, or other objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence. Upon their production, the court may permit the parties and their attorneys to inspect them, or portions thereof."
Section 12-21-2(a) states:
"(a) When any deed, writing or other document which it may be necessary to use as testimony in any case may be in the possession of any person resident in this state who is not a party to the case, the clerk of the court in which the case is pending shall, upon application of the party or his attorney desirous of using such testimony, issue a subpoena duces tecum directed to the person having such book or other document in his possession, requiring him to appear and bring with him into court the paper desired to be used as testimony. Service shall be by a sheriff, constable or some private person, and the official return of the sheriff or constable or the affidavit of such private person shall be sufficient evidence that the same was duly served; but, in all cases, the judge may require the summary production of any book or document by subpoena duces tecum where the witness is able to produce it and where the ends of justice require such summary production."
Rule 17.3(c), states that "[t]he court, on motion made promptly, may dismiss or modify a subpoena duces tecum if compliance therewith would be unreasonable, oppressive, or unlawful."
The view adopted by the Alabama Supreme Court in Rule 17.3(d), was previously expressed by the United State Supreme Court in United States v. Nixon, 418 U.S. 683, 698-700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In Nixon, the United States Supreme Court stated:
"A subpoena for documents may be quashed if their production would be `unreasonable or oppressive,' but not otherwise. The leading case in this Court interpreting this standard is Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951). This case recognized certain fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, id., at 220, 71 S.Ct. 675; (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials, ibid. As both parties agree, cases decided in the wake of Bowman have generally followed Judge Weinfeld's formulation in United States v. Iozia, 13 F.R.D. 335, *76 338 (S.D.N.Y.1952), as to the required showing. Under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general `fishing expedition.'"
(Footnotes omitted; emphasis added.) This Court has embraced the standard of review set out in United States v. Nixon. See Sale, supra, and Williams v. State, 489 So.2d 4 (Ala.Cr.App.1986).
Our analysis of the validity of Judge Williams's ruling is hampered by the fact that he failed to make findings of fact as to the four factors set out in United States v. Nixon. The Circuit Court for Madison County is directed to make specific findings of fact concerning the four factors articulated by the United States Supreme Court in United States v. Nixon. Specifically, Judge Williams is directed to address his findings to (1) whether the requested documents are evidentiary and relevant; (2) whether they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) whether Reynolds can prepare for trial without the production and inspection in advance of trial and whether the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) whether application for the subpoena was made in good faith and not as a general "fishing expedition." See United States v. Nixon. Due return should be filed with this Court no later than 28 days from the date of this opinion.
ORDER ISSUED.
McMILLAN, COBB, BASCHAB, and FRY, JJ., concur.

On Return
LONG, Presiding Judge.
The State of Alabama filed a petition for a writ of mandamus directing the Honorable Bruce E. Williams, circuit judge for the Twenty-third Judicial Circuit, to quash the subpoena duces tecum issued in this case to the Green Bottle Grill restaurant. On October 6, 1999, we directed the trial court to make findings of fact as to the following four factors articulated by the United States Supreme Court in United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974): (1) whether the requested documents are evidentiary and relevant; (2) whether they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) whether Reynolds can prepare for trial without the production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) whether application for the subpoena was made in good faith and not as a general "fishing expedition." See State v. Reynolds, 819 So.2d 72 (Ala.Cr.App.1999). The case is now before this Court on return to that order.
The trial court instructed both parties to submit supplemental responses in support of their respective positions. Judge Williams adopted as his findings the response submitted by Reynolds. The findings state:
"With respect to the first factor, Reynolds states that under Ex parte Walker, 623 So.2d 281 (Ala.1992) (a case with strikingly similar facts), Reynolds *77 may offer evidence at trial showing that some other person committed the crime. This evidence must be of the type that would be admissible if that third party was on trial. Id.; Lowrey v. State, [26 Ala.App. 159, 155 So. 313 (1934)]. This type of evidence `is particularly important where the State's case rests primarily upon circumstantial evidence.' Walker, 623 So.2d at 284. Because the State's case against Reynolds rests entirely upon circumstantial evidence, the records requested are particularly relevant to show that another person committed the offense with which Reynolds is charged. Under Walker, Reynolds is entitled to present evidence that other persons are responsible for any missing money, including evidence that others had access ... to the same records. `[I]n order to rebut the circumstantial evidence against him, the defendant [has] a right to introduce any legal evidence tending to show that someone else may have been guilty in exoneration of himself.' Green v. State, 258 Ala. 471, 64 So.2d 84 (1953), cited in Walker, 623 So.2d at 284. Reynolds has satisfied the first requirement under Nixon.

"With respect [to] the second and third factors, Reynolds would point out that the State apparently concedes these factors, as the State has focused its arguments solely on the last factor. Nevertheless, the second and third factors are satisfied for several reasons. The documents at issue are solely in the possession of the Green Bottle Grill, such that there is no possible way Reynolds could procure them reasonably in advance of trial. Reynolds is aware of no other shorter format in which the information is stored, e.g., computer disc, microfilm, etc. Reynolds cannot prepare for trial without inspecting the documents well in advance of trial, as the documents are voluminous and detailed. Reynolds expects that she will need an accountant or another expert to analyze these records in order to show that another person committed this crime.
"Finally, with respect to the last factor, Reynolds's subpoena was issued in good faith and not intended as a general `fishing expedition.' At trial Reynolds expects to show that several other persons had access to the restaurant's financial records and cash, and that these employees were known to take or borrow money. This is a proper purpose for seeking the records under Walker. Reynolds has no generalized desire to look at voluminous documents from the Green Bottle Grill. The only purpose for the request is obtaining documents which establish her innocence. The State has no idea whether these documents, in fact, are exculpatory because the State has not analyzed the documents. Rather, the State simply characterizes these documents as a subject of a `fishing expedition.' Reynolds, however, expects the documents to show a pattern beginning even before she worked there and continuing throughout her employment of other employees who had access to the restaurant's financial records."
(Emphasis added.)
We confine our discussion to the fourth prong of the Nixon analysis whether the application was made in good faith and not as a general "fishing expedition." Clearly, the above findings reflect that Reynolds has no knowledge that any exculpatory documents do in fact exist. Also, the evidence at the hearing on the motion to quash reflects that the sole purpose of the subpoena was a "fishing expedition." Reynolds's attorney stated that *78 he did not know what was contained in the records but that he wanted to examine them to see if they pointed to anyone else's involvement in the theft. He stated, "[i]f I could just have a look at the things that I've requested, I could make a determination if someone else might be involved in this." The record of the hearing more than supports the conclusion that Reynolds was using the subpoena to determine whether exculpatory evidence existed. This is not the purpose of a subpoena duces tecum; it is more aptly the purpose of discovery.
In People v. Morrison, 148 Misc.2d 61, 66-67, 559 N.Y.S.2d 1013, 1017-18 (N.Y.City Crim.Ct.1990), the court discussed the difference between a subpoena duces tecum and discovery:
"A fundamental distinction exists between a defendant's right to discovery... and a defendant's right to compel the production of evidence by subpoena... The right to discovery is the right to receive information and documents from the prosecution and its agents concerning the case. A defendant's right to discovery is governed and limited by statute [in Alabama, by rule].... The specific material that is required to be disclosed is specified in the statute and the timing of its disclosure is, likewise, governed by statute.
"The right to compulsory process, on the other hand, is the right to compel witnesses to come into court pursuant to subpoena and give testimony or produce documentary or other physical evidence. The right to compulsory process has its roots in constitutional principles which recognize that a defendant must be able to compel the production of evidence in the proceedings relating to the case in order to present a defense to the charges if he or she chooses to do so. However, based on constitutional analysis set forth above and decisional law, the right to compulsory process is not an unlimited and unrestricted right to compel the production of any documents sought by a defendant. Rather, it is a restricted right, the exercise of which must satisfy certain relevancy and evidentiary standards and which is subject to other procedures for obtaining the material sought.
"... The right to compel material pursuant to subpoena is, therefore, limited to the compulsion of `evidence' and is not a right to compel the production of documents that refer to evidence or that provide leads that will assist in the identification of evidence or to ascertain the existence of witnesses or evidence."
Alabama courts have often said that a subpoena duces tecum is not a method of discovery. As this Court stated in Sale v. State, 570 So.2d 862, 863 (Ala.Cr.App. 1990),
"It appears to this Court that the defendant was seeking to use the subpoenas duces tecum as a method of discovery. In Alabama, a subpoena duces tecum does not `embrace[] discovery as one of its purposes,' Ex parte Anniston Personal Loans, Inc., 266 Ala. 356, 359, 96 So.2d 627, 630 (1957); Williams v. State, 383 So.2d 547, 559 (Ala.Cr.App. 1979), affirmed, 383 So.2d 564 (Ala.), cert. denied, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980), and should not be employed as a `fishing expedition,' Ex parte Darring, 242 Ala. 621, 624, 7 So.2d 564, 566 (1942)."
Other states have followed this rationale. See State v. Watson, 726 A.2d 214 (Me. 1999); Decrosta v. State Police Laboratory, 182 A.D.2d 930, 581 N.Y.S.2d 938 (N.Y.App.Div.1992); People v. Warden, 175 A.D.2d 821, 572 N.Y.S.2d 939 (N.Y.App.Div.1991); People v. Ramirez, 129 Misc.2d 112, 492 N.Y.S.2d 906 (N.Y.Sup.Ct.1985); People v. Cannon, 127 Ill.App.3d 663, 469 N.E.2d 375, 82 Ill.Dec. 841 (1984).
*79 Here, Reynolds attempted to use the subpoena duces tecum as a means to search the victim's files for any possible exculpatory evidence. "A subpoena duces tecum may not be used `in the hope of finding something helpful to [the] defense.'" People v. Magliore, 178 Misc.2d 489, 493, 679 N.Y.S.2d 267, 270 (N.Y.City Crim.Ct.1998), quoting Decrosta, 182 A.D.2d at 931, 581 N.Y.S.2d at 939. "Generally, a subpoena duces tecum may not be used as a fishing expedition for the purpose of discovery or to ascertain the existence of evidence...." Decrosta, 182 A.D.2d at 931, 581 N.Y.S.2d at 939.
The standard we use in evaluating whether a trial court has erred in refusing to quash a subpoena duces tecum is whether the trial court abused its discretion. "`A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.'" Williams v. State, 489 So.2d 4, 8 (Ala.Cr.App.1986), quoting Dowdy v. Gilbert Engineering Co., 372 So.2d 11, 12 (Ala.1979).[1] The record of the hearing reveals no rational basis for Judge Williams's ruling.
Before a writ of mandamus may issue, the petitioner must show (1) a clear legal right in the petitioner to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court. State v. Williams, 679 So.2d 275 (Ala.Cr.App.1996). The prerequisites for the issuance of a mandamus are all satisfied here. This petition is due to be granted.
We remind the State that the fact that we are granting this petition, which results in quashing the subpoena duces tecum, does not relieve the State of its duty to disclose exculpatory information. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
PETITION GRANTED.
McMILLAN, COBB, BASCHAB, and FRY, JJ., concur.
NOTES
[1] We have upheld orders quashing subpoenas duces tecum in the following cases: Maples v. State, 758 So.2d 1 (Ala.Cr.App.1999) (subpoena directed to Alabama Board of Pardons and Paroles requesting information about 20 individuals was quashed because there was no showing of materiality or relevancy); Jackson v. State, 516 So.2d 726 (Ala.Cr.App.1985) (subpoena that directed district attorney and his staff members to furnish records and notes concerning their exercise of peremptory strikes quashed); Williams v. State, 489 So.2d 4 (Ala.Cr.App.1986) (subpoena that requested Huntsville Times to produce all newspaper accounts of the defendant's case from July 1981 to September 1984 quashed); Dowdy v. Gilbert Engineering Co., 372 So.2d 11 (Ala. 1979) (subpoena quashed because it was served only three days before trial).